FILED
JAN 2 2 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIBRIL L. IBRAHIM 08587-007
USP TERRE HAUTE
P.O. BOX 33
TERRE HAUTE, INDIANA 47808

      Plaintiff

v.

UNITED STATES OF AMERICA

U.S. DEPARTMENT OF JUSTICE
10th AND CONSTITUTION AVENUE N.W.
WASHINGTON, D.C. 20530

FEDERAL BUREAU OF PRISONS
320 FIRST STREET N.W.
WASHINGTON, D.C. 20534

DISTRICT OF COLUMBIA GOVERNMENT
OFFICE OF THE MAYOR
441 FOURTH STREET N.W. SUITE 1100
WASHINGTON, D.C. 20001

      Defendants

Case: 1:08-cv-00118
Assigned To : Unassigned
Assign. Date : 1/22/2008
Description: Pro se General Civil

## COMPLAINT

Plaintiff, Jibril L. Ibrahim (formerly Grant Anderson, Jr.) submits the instant complaint against the named Defendants and, in support hereof, states as follows:

### PARTIES

1. Plaintiff, Jibril L. Ibrahim (hereinafter "Plaintiff" or Ibrahim) is an individual currently confined at USP Terre Haute, P.O. Box 33, Terre Haute, Indiana and during all times relevant to this Complaint, a former D.C. Code offender transferred to the Federal Bureau of Prisons by virtue of the D.C. Revitalization Act, D.C. Code § 24-101.

2. Defendant, United States of America, is the Federal Government, under 28 U.S.C. § 2674.

3. Defendant, Federal Bureau of Prisons, is an agency or corporation primarily acting as an instrumentality which oversees all federal prisons throughout the United States. 28 USCA § 2671.

RECEIVED
DEC 17 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

4. Defendant, District of Columbia, is a municipality or organization of the D.C. Government existing by virtue of the D.C. Self-Government and Government Reorganization Act, P.L. No. 93-198, 774 (1973).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1331, 1346(b)(1)(FTCA) and 42 USCA § 1983 (Civil Rights Act) which permits suits against any person acting under color of state law or laws of the District of Columbia.

6. Supplemental jurisdiction is invoked under the National Capital Revitalization and Self-Government Improvement Act of 1997, D.C. Code §24-101 et seq and 18 USC §§ 4041-42.

7. Plaintiff Ibrahim has exhausted, constructively exhausted, or is exhausting his Administrative Appeals prior to bringing his suit. 42 USCA § 1997e (a) and 28 USC § 2675.

8. Venue is appropriate in this judicial district under 28 USCA §§1391 (b)(3) (c).

## FACTUAL BACKGROUND

9. Plaintiff Ibrahim avers that on December 7 - 22, 2005, he was seen by Hepatologist Dr. William Somers, at USP Allenwood. Dr Somers confirm that plaintiff's liver was firm and ordered a liver biopsy scheduling in the presence of Dr. C. Viermiere, Chief Medical Officer.

10. Close to one month had elapsed without any plausible date for the biopsy surgery, when plaintiff filed an Administrative Grievance complaint against the Medical Department to provide a tentative date, in January 2006. Upon receipt of the Administrative Grievance's response, Warden Jonathan Miner, averred that a biopsy was being scheduled, but refused to provide any proximity date regarding when. Plaintiff appealed the warden's decision to the regional Director's Office in Philadelphia, Pennsylvania. See Exhibit 1 hereto.

11. Upon receiving the Regional Director's response, the Regional Director partially granted plaintiff's appeal by acknowledging that a biopsy was scheduled in April 2006, after four months of dormancy. Exhibit 2 hereto.

12. On April 18, 2006, plaintiff was transferred to the Susquehana Medical Center for a livery biopsy surgery test. Upon being examined and three liver samples taken, plaintiff was immediately transported back to USP Allenwood without any prescriptions for pain, instructions (in the event of internal bleeding) from Allenwood's medical personnel...and released back into the general population.

13. After six months elapsed, plaintiff made out an inmate cop-out (Request Form) for test result of the liver biopsy taken April 18, 2006...sometime in early May 2006. Exhibit 3. The medical staff assured plaintiff that no test results on plaintiff had returned even though the results were in plaintiff's medical files.

14, On May 30, 2006, plaintiff sent a cop-out to Dr. Viermiere, requesting a projection date in which treatment with Interferon would begin. While awaiting his decision and answer, Dr. Viermiere placed plaintiff on the callout list for his quarterly Chronic Care exam, June 2, 2006.

15. Upon being interviewed by Dr. Viermiere June 2, 2006, Dr Viermiere and plaintiff discussed the liver biopsy test results taken April 18, 2006 (medical staff told plaintiff the files were not in his medical folder). Notwithstanding the medical staff's pronouncements, and the failure to release medical records, Dr. Viermiere confirmed the test results by

stating that "plaintiff had mild fibrosis, Stage I." That it was possible that the hepatologist had tested the better part of the liver as oppose to the diseased part, and misdiagnosed plaintiff's condition--because certain vital signs of plaintiff, such as, platelets, ALT and creatinine levels appeared normal--questionable to the lab results. Dr Viermiere then stated, "that he had more troubling news for plaintiff, that was, plaintiff would probably not be treated because he only had Stage I fibrosis--countermanding Dr. Somers recommendation, isntructions and orders for treatment on December 7, 2005, even though Dr. Viermiere's expertise is in general medicine and, not the Science of Hepatology. Exhibit 4.

16. Dr Viermiere then stated, "he was going to wait six or more months and continue to monitor plaintiff's condition but would order an 'ultrasound abdominal' exam on June 8, 2006. Exhibit 5.

### STATEMENT OF THE CLAIM

#### COUNT I.   F.T.C.A. VIOLATION

17. Paragraphs 1 - 16 are incorporated by reference herein as realleged and restated.

18. The Federal Tort Claims Act waives the Government's immunity when its employees are negligent or wrongful act within the scope of their employment. U.S. v. Orleans, 425 US 807, 814 (1976); see also U.S. v Muniz, 374 US 150 (1963).

19. Plaintiff contends that following the April 18, 2006 liver biopsy surgery, Dr. Viermiere, while acting within the scope of... employment as an employee of the United States, Bureau of Prisons, in the capacity of the Chief Medical doctor at USP Allewnood (and only doctor), countermanded Hepatologist, Dr. Somers instructions, recommedation and orders for treatment with inteferon well before the positive liver test results were done, upon interveiwing plaintiff during his chronic care quarterly

Page Five

examination, June 2, 2006.

20. Even though the biopsy revealed and confirmed Stage I firbosis, Dr. Viermiere has not attempted an inchoate effort to secure treatment and, has negliegntly and omissively placed plaintiff in a posture for serious physical injury, privation, suffering and death. Failure to adhere to Program Statement (P.S.) 6190.03 was the moving force behind the deprivation or privation of plaintiff's injury which dr. Viermiere was bound to follow, inter alia. See Jones v. U.S., 91 F.3d 623, 624 (3rd Cir, 1996).

21. To demonstrate Dr. Viermiere's negligence, omission or wrongful act, he scheduled plaintiff for an 'ultrasound abdominal' exam as a subterfuge. . . but never recognized (or refused to recognize) a duty to adhere to P.S. 6190.03-Infectious Diseas management: "The Bureau will manage infectious disease in the confined environment of a correctional setting through a comprehensive approach , which includes testing, appropriate treatment, prevention, education and infection control measures." (Policy available on www.bop.gov/Data Source.execute/ds Policy Loc).

22. Moreover, Dr. Viermiere's negligence, omissions or wrongful acts is further demonstrated by his intonations to plaintiff "that since plaintiff was stage I fibrosis...chances are...the Utilization Review Committe (which Dr. Viermiere chairs) will not approve treatment unless plaintiff's condition worsened"...at which time, there would be no need to treat plaintiff. The actions, or inactions in this case, of Dr. Viermiere was the direct and proximate cause of plaintiff's injury. 28 C.F.R. §§ 549.10 - 549.12 et seq.

## COUNT II.  ADA/REHABILITATION ACT VIOLATIONS

23. Paragraphs 1 - 22 are incorporated herein by reference as realleged and restated.

24. Plaintiff has a 'qualifying' condition which falls under the ADA and

Rehabilitation Act and has been discriminated against under the Acts due to enormous costs at public entities for Interferon pills and, or injections, as well as, the costs for liver transplants (250 K to 1 Million dollars)...which typically strains the resources of Allenwood's budget. Additonally, plaintiff's incurable disease (cancer and Hep C) substantially affects a major life activity, such as, caring for oneself, breathing, exercising (due to fatigue, tiredness, lack of energy, stamina, weakness, a malaise and sluggishness). 29 CFR § 1630.2 (j)(1)(1).

25. It is defendant's, U.S. and B.O.P and District's unwritten policy (tacit or posit) of automatically denying prisoners treatment under its care (18 USC §§ 4041 - 4042, DC Code 24-442) with serious medical life threatening ailments due to concerns for costs at public entities--knowing that fibrosis of the liver is a precursor to cirrhosis, and the finding of strands of fibrosis is the best predictor of the potential for later developments of cirrhosis (circles of fibrosis). See e.g. Baker v. D.C. 326 F.3d 1302 (D.C. Cir. 2003); Ali, 278 F.3d 1, 8 (D.C. Cir. 2002); Freeman v. Inch and Frimpong, et al;, CA No. 3: CV-04-1546 (MD pa. 2004) (currently pending); Crum v. D.C., et al, 2005 US App. LEXIS 22758 (no.05-7050)(D.C. Cir. 10/20/05). See also Arrington v. Inch, et al, CA No. 1:05-CV-0245 (MD Pa. 2005).

26. Furthermore, under the Rehabilitation Act (29 USC § 706(7)(B)) people with infectious diseases are considered handicapped. School Board of Nassau County v. Arline, 580 US 273, 282-286, 107 S.Ct. 1123 (1987).

COUNT III. INTERFERENCE WITH PRESCRIBED/RECOMMENDED TREATMENT

27. Paragraphs 1 - 26 are incorporated by reference as reallged and restated.

Page Seven

28. Plaintiff contends that on December 7, 2005, Dr Williams Somers of Divine Providence Hospital Campus, 1100 Grampier Blvd, Williamsport, Pennsylvania 17701-1995, examined plaintiff. Upon completion and, review, on December 22, 2005. Dr Somers (endorsed by Dr. Viermiere) recommended and ordered Pegasus for one year and ...vaccination if necessary. Notwithstanding Dr. Somers recommendation and prescription for treatment, Dr. Viermiere countermanded Dr. Somers instructions by not providing plaintiff with any medication contemporaneous to the filing of this complaint. <u>Martinez v. Mancusi</u>, 443 F.2d 921, 924 (2nd Cir,. 1970) with <u>Benter v. Peck</u>, 825 F. Supp. 1411 (S.D.Iowa 1993); <u>Woodall v Foti</u>, 648 F.d2 268 (5th Cir. 1981).

29. That Dr. Viermiere's policy, practice, customs or preventing, interfering with and countermanding Specialist recommendations and medical instructions are well known through the Bureau. All USP Allenwood medical staff and personnel have questionable backgrounds, including Dr. Devon Chanmugen, which are deemed to be a "danger to the public." Dr. Viermiere tenure here is the result of a practice called **floating** which is the norm. ...Floating is the practice of moving personnel from instutition to institution to avoid detection, wrongdoing, fines and lawsuits, etc.

30. Dr Viermiere's refusal to carry out the instructions and orders of Dr. Somers, with respect to plaintiff's conditions, was the direct and proximate cause of plaintiff's injury...due to deliberate indifference... with respect to the Eighth Amendment and P.S. 6190.03, 18 USC §§ 4041-42 and 18 U.S.C. § 5003 et seq. and, to which each defendant are liable.

31. Dr. Viermiere, as an agent, employee and, or servants of the United States, Bureau of Prisons, and District of Columbia (under the Revitalization Act) had subjective knowledge of the serious medical risk and needs (Dr. Viermiere is plaintiff's chronic care physician) and recklessly

Page Eight

disregarded the excessive risk to plaintiff's health and safety from that risk (Dr. Viermiere, through Dr. Somers and education knows, or should have known, that Hep C untreated caused death). See Baker v. D.C., 326 F.3d at 1306 n. 2 (D.C. Cir. 2003). and Jones, 91 F.3d 623 624 (1996).

## COUNT IV. DELAYED TREATMENT

32. Paragraphs 1 - 31 are incorporated by reference as realleged and restated.

33. Plaintiff avers that the BOP's delayed treatment, which appears to be a pedantical intentional act of delay-caused serious injury to plaintiff...began in December 2005 up unto the present time, is and was objectively serious (due to plaintiff's Stage I fibrosis) and the United States, Bureau of Prisons and District of Columbia's employee's deliberate indifference to plaintiff's safety and health caused said injury. Cf. Laughlin v. Schriro, 430 F.3d 927(8th Cir. 2005).

34. According to Dr. Jenny Heathcote, M.d., **Living With Hepatitis C: Everything You Need to Know** (2001 Ed.)[A Firefly Book Publisher] Chapt. 5, Treatment and Side Effects, p. 59, she stated: "There are two main reasons to try antiviral treatment for hepatitis C: (1) to get rid of symptoms so you can feel better, which is the main goal for those who have symptoms, (2) to prevent the liver from deteriorating by eradicating the virus." As long as the virus remains present, further damage to the liver is possible. Antiviral therapy is one of the things that can held stops this, It is unlikely that the virus will disappear without antiviral therapy. Id.

35. That defendants delayed treatment, through its agents, servants or employees, has a detrimental effect, and amounts to deliberate indifference to plaintiff's health and safety. Farmer v. Brennan, 511 US 825

840 - 42 (1992).

## COUNT V.   MEDICAL MALPRACTICE

36. Paragraphs 1 - 35 are incorporated by reference as realleged and restated.

37. Plaintiff avers that defendants, through its agents, servants or employees, provided him with medical malpractice through their inadequate medical examinations. In one session with Dr. Viermiere, in latter 2005, Dr. Viermiere examined plaintiff during the routine chronic care exam (which is every three months) and determined that plaintiff's liver was soft. This determination and procedure was done by pressing plaintiff's lower abdomin area on the right side (although the liver is situated in the upper most part of the right rib cage). Exhibit 6.

38. Following the December 7, 2005 exam, by Somers, M.D., of plaintiff's liver, Dr. Viermiere re-examined plaintiff at another quarterly chronic care evaluation, this time concluding that plaintiff's liver was hard...although Dr. Somers (Hepatologist Specialist) determined it as firm. The failure of Dr. Viermiere to know the exact location of plaintiff's liver, his multiple prognosis or misdiagnosis of plaintiff's liver texture without a liver biopsy, amount to medical malpractice, as well as also calls into question the United States, Bureau and District of Columbia's employee's ability, training, experience and education in practicing medicine on inmate's and plaintiff.

## COUNT VI.   NEGLIGENCE AND GROSS NEGLIGENCE

39. Paragraphs 1 - 38 are incorporated by reference as realleged and restated.

40. From 2001 to the present, the United States, Bureau of Prisons and District of Columbia have demonstrated  acts of negligence by failing

to diagnose plaintiff's hepatits C through medical records; (2) testing; (3) failed treatment procedures after instructions and recommendations from Dr. Somers; (4) delayed medical treatment; (4) misdiagnosing the seriousness of the disease and liver condition and; (5) contemporaneous refusal to still treat plaintiff but, ordering an Ultrasound Abdomin exam, which has little or nothing to do with treating Hep C. This continuous ignoring of a substantial risk to plaintiff amount to negligence or gross negligence. See Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994); see D.C. Code § 24-442 and the Revitalization Act of 1997, D.C Code § 24-101.

41. The defendants and its employee owed plaintiff a duty to perform professionally and efficiently in their respective duty and without violating plaintiff's rights. The defendants action constitutes negligence or gross negligence for which defendants are liable. Cf. Herbert v. D.C., 691 A.2d 1175 (D.C. App. 1997). That despite the rise of Hep C at U.S.P. Allenwood, Seminars on eradication and prevention efforts defendants still negligently failed to do everthing possible and necessary to treat plaintiff, Exhibit 7 (Seminar flyer); owed a duty to the plaintiff, Jones, 91 F.3d 623, 624 (1996) and breached its duty, 18 U.S.C. §§ 4041 - 4042, 28 C.F.R. §§ 541.12 et seq Chap. 3- Inmates Rights and Responsibilities....¶ 4....You have the right to health care--and medical and dental treatment. See U.S. v. Munez, 374 U.S. 150 (1963)(suit alleging that the negligence of prison employees was responsible for the delay in diagnosis and removal of tumor, which caused inmates blindness, was a suit that could be maintained under the FTCA), 28 C.F.R. §§ 549.10 - 549.17 et seq.

42. Additionally, to particularize more fully defendant(s) negligence regarding inadequate medical follow-up care, on march 31, 2006, plaintiff's EKG reading demonstrated and showed that plaintiff suffered a

Page Eleven

mild heart attack with Myocardial damages. Exhibit 8. Defendants employees have negligently failed to do any follow-up evaluations, schedule an appointment to a cardiologist for evaluation of heart damage, treatment with enhancement drugs, etc, to prevent further damage to plaintiff's heart muscles. See also 28 C.F.R. § 35.190 identifying the Department of Justice as the agency that is to implement compliance procedure concerning state and local correctional facilities.

43. Defendants, United States, Bureau of Prisons and District of Columbia's failure to use reasonable care, through its employees, physicians, health care providers, was not and is not commensurate with reasonable professional standards of care and by similar and reasonable skill and training and, unacceptable and inappropriate by similar and reasonably careful physicians.

COUNT VII. Emotional and Mental Distress and Duress

44. Paragraphs 1 - 43 are incorporated by reference as realleged and restated.

45. By reason of the foregoing, the United States, Bureau of Prisons and District of Columbia, by its employee, dr. Viermiere and medical staff at USP Allenwood, intentionally cause plaintiff to suffer emotional distress as alleged above, because being given a diagnosis of Hep C, without treatment or followup care, is a depressing experience in itself, engendering duress.

COUNT VIII. § 1983 VIOLATIONS BY DISTRICT OF COLUMBIA

46. Paragraphs 1 - 45 are incorporated by reference as realleged and restated herein.

47. Plaintiff Ibrahim is D.C. Code offender incarcerated in federal prison pursuant to the Revitalization Act of 1997, Pub. L. No. 105-33, 111 Stat. 251, 712, D.C. Code 24-101, federal statute applicable exclusively to the District of Columbia. The Act of 1997 charges the

Page Twelve

Federal Bureau of Prisons with responsibility for plaintiff's care, see also D.C. Code 24-442. Plaintiff alleges that Federal employees [18 USC § 5003] individually and officially acting, did act under color of law (the Revitalization Act of 1997) violated plaintiff rights under 42 U.S.C. § 1983.

48. Plaintiff's complaint cites a variety of violations of his First and Eighth Amendments...violations linked to inadequate medical care provided to plaintiff, as well as, various internal benefits denials. As these allegations are directed to employees, agents or servants of the District of Columbia, liberally construed, they could be treated as allegations brought under 1983...for which the District of Columbia is liable.

COUNT IX. RETALIATION BY BUREAU AND DISTRICT OF COLUMBIA

49. Paragraphs 1 - 48 are incorporated by reference herein as realleged and restated.

50. Plaintiff alleges that because of this ensuing Civil Action, <u>Ibrahim v. District of Columbia, et al</u>, No. 05-CV-00051 (JR), defendants have retaliated against plaintiff by delaying, countermanding and denying treatment for his life-threatening disease.

51. Retaliation can be demonstrated from Dr. Viermiere's refusal to order medication to treat plaintiff infectious disease since December 7, 2005, see p.S. 6190.03, but has scheduled an Ultrasound Abdomin exam which has nothing to do with liver infections,, as well as, ordering the administer of Interferon to plaintiff and prisoners who have been diagnosed well after plaintiff had been treated. Defendants action, through its employee, agents or servants, was the direct and proximate cause of plaintiff injury under the First Amendment. See Pickering, 391 U.S. at 574, 88 S.Ct. at 1737 - 1738; <u>Hines v. Gomez</u>, 853 F. Supp. 329 (N.D. Cal. 1994)(retaliation for filing grievances).

. See also <u>Crawford-El v. Britton</u>, 523 U.S. 574 (1998).

COUNT X.   LIABILITY OF THE DISTRICT OF COLUMBIA

52. Paragraphs 1 - 51 are incorporated by reference as realleged and restated.

53. Defendant District of Columbia was at all relevant times the employer of Dr. Viermiere, a federal employee, by virtue of the Revitalization Act of 1997. Defendant District is a governmental entity subject to suit under D.C. Law and § 1983. Under the doctrine of <u>respondeat superior</u> the District is liable for violations of District of Columbia law committed by employees acting within the scope of their employment. Under § 1983, the District is liable for federal constitutional violations that are: (1) committed under color of law by D.C. employees exercising policymaking authority or; (2) caused by District of Columbia customs, policy or practice. See 24-101, D.C. Code; § 11201(b) (Revitalization Act of 1997).

54. During the times relevant in this case, Dr. Viermiere was an employee of the District to whom the District of Columbia delegated policymaking authority to determine prisoners and plaintiff's treatment, medical care and maintenance, and no substantive written or orally communicated District of Columbia or supervisor's policy constrained defendant's discretion to determine the treatment and conditions under which plaintiff would be cared for.

55. As to Dr. Viermiere's relevant conduct, he was acting within the scope of his employment and under color of D.C. law. He personally participated in the violations of plaintiff's rights and knew at all relevant times that they were violating plaintiff's rights. District of Columbia therefore liable under § 1983 for the unconstitutional abuses of the plaintiff because, the abuse was imposed By Dr. Viermiere

Page Fifteen

and, therefore, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, 18 U.S.C. §§ 4041-42, P.S. 6190.03. The abuses were motivated by a desire to retaliate against plaintiff for his prior and present litigation history and, therefore, in violation of the right to petition for redress protected by the First Amendment. Under § 1983 and 28 U.S.C.A. § 2674, each of the individual defendants who participated, sanctioned and condoned in abuse, denials and retaliation, are liable to plaintiff for the abuse, privations plaintiff suffered. The abuses and privations and internal benefits denials also constituted outrageous conduct and negligence, deliberate indifference and retaliation for which the United States, Bureau and District of Columbia are liable to plaintiff under the common-law and, laws of the District of Columbia. See also 18 U.S.C. § 5003-Custody of State Offenders subsections (a)(1).

COUNT XIII. AGENCY'S LIABILITY FOR ABUSES AS CO-CONSPIRATORS

61. Paragraphs 1 - 60 are incorporated by reference as realleged and restated.

62. The BOP and District of Columbia's official custom, policy and practice of abusing plaintiff -- prisoners was a conspiracy, at least tacit or, posit, to violate the Eight Amendment, 18 U.S.C. §§ 4041-42, and a violation of 42 U.S.C. § 1983. With respect to defendants conduct toward plaintiff, this custom and practice also was a conspiracy to violate the First Amendment. The conspiracy also violated D.C. common law and Federal law. Each instance of abuse of plaintiff during his tenure at USP Allenwood was an overt act within or and in furtherance of the conspiracy. Each defendant knew of the conspiracy, at least tacitly or positly, and joined in it by committing or aiding and abetting one or more of its overt acts. Under § 1983 and the common law-each defendant is liable to plaintiff for the violations suffered by the plaintiff Ibrahim.

Page Fourteen

exercising delegated policymaking authority via the Revitalization Act of 1997.

56. District of Columbia's custom and practice of failing to adequately investigate, monitor and supervise abuse of prisoner's (particularly Ibrahim because of his litigation history) manifests deliberate indifference to the rights of prisoners to be free from unconstitutional privations. Because this custom and practice caused or subjected plaintiff Ibrahim 's violations of § 1983 stated above, District of Columbia is liable to plaintiff for each violation suffered by plaintiff and under the doctrine of respondeat superior. District is liable for its employees outrageous and unacceptable conduct and negligence that injured plaintiff that was committed by Dr. C. Viermiere.

### COUNT XI. TOLERATION OF ABUSES BY THE BOP AND DISTRICT INFEREABLE FROM MULTIPLE INCIDENTS

57. Paragraphs 1 - 56 are incorporated by reference as realleged and restated.

58. The subjection of plaintiff to unconstitional and statutory privations, internal benefits during his tenure at USP Allenwood for five years, ...manifests, by inference, a BOP and District custom and practice of tolerating abuse of prisoners and plaintiff in retaliation for 'actual' or 'perceived' misconduct or 'offense' by them. Cf. Carter v. D.C., 795 F.2d 116, 124 (D.C. Cir. 1986)(egregious instances of misconduct, relatively few in number but following common design, may support an inference that the instances would not occur but for municipal tolerance of the practice in question.)

### COUNT XII. CLAIMS AGAINST INDIVIDUAL DEFEFNDANTS FOR COMMITTING OR ABETTING ABUSES OF THE PLAINTIFF IBRAHIM

59. Paragraphs 1 - 58 are incorporated by reference as realleged and restated.

60. The abuses of plaintiff was intentional, malicious and sadistic,

COUNT XIV    INTERFERENCE WITH RELIGION AND RELIGIOUS PROGRAMMING

63., Paragraphs 1 - 62 are incoproated by reference herein as realleged and restated.

64. Plaintiff Ibrahim contends that in December 2004 and on May 1, 2006, he signed BP-S 741.053, Life Connections Program, application to participate in this religious interfaith based program at Petersburg, Va., or Terre Haute, Indiana or, Levenworth, Kansas. Agents or employees of the District of Columbia, specifically, Unit Manager, Don Troutman, CMC Mark Tanner and K. Mc Mahan, . ,. .. have done everthing possible to prevent, impair, interfere ande deny plaintiff participation by not submitting paperwork for it to reached officials at Central Office, Director David Morton and Susan Van Vallen, after having spoke with a Bureau agent, Reverend A. Wallace, at USP Allenwood, on or about July 12, 2006 concerning this problem.

65. That the District of Columbia failure, through its lawful and designated agents or employees, showed due respect to plaintiff's religious beliefs when each interfered with and prevented plaintiff from attending Life Connections Program under the Religious Land Use and Institutionalized Persons Act. See Borzvich v. Frank, 439 F.3d 388 (7th Cir. 2006); Wilkerson, U.S. No. 03-9877, 5/31/05, 77 Cr. L. 196; Werner v. Mc Cotter , 49 F.3d 1476 (10 th Cir. 1995); de Hart v. Horn, 227 F.3d 47 (3rd Cir. 2000) as well as, the Establishment Clause of the First Amendment, U.S. Constitution. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001).

RELIEF ERQUESTED

Wherefore, for the foregoing reasons, plaintiff Ibrahim seeks relief as follows:

1. Compensatory damages in the amount of one million dollars from the United States, Bureau of Prisons and District of Columbia Governments;

2. Punitive damages for one million dollars from the District of Columbia as a person under 42 U.S.C.A. § 1983.

3. Injunctive relief barring defendants, their successors in office/designees from denying treatment as prescribed by Dorcotr Williams Somers, Hep Specialist, in 2005 at USP Allenwood.

4. Declaratory relief that defendants have violated the aforesaid laws and that said vio-

Page Seventeen

lations occurred as a result of defendants' customs, practices, policies or procedures.

5. Order immediate treatment for plaintiff's life-threatening disease.

6. Deem Hep C as a life-threatening ailment and illness within the confines of the American with a Disabilities Act of 1990 and Rehabilitation Act, se <u>Ibrahim v. D.C., et al., 463 F.3d</u> 3 (D.C. Cir. 2006)(stating claim under 1915(g)).

7. Award attorneys fees and litgation expenses and costs under 42 U.S.C.A. § 1988 and 28 U.S.C.A. § 35.175.

8. Grant such other and further relief as this Court deem appropriate, fair, just and equitable.

Executed on: 12/12/07

_Jibril L. Ibrahim_
Jibril L. Ibrahim 08587-007
USP Terre Haute, P.O. Box 33
Terre Haute, In. 47808

**VERIFICATION**

I, hereby certify that the information contained herein is true and correct under the penalty of perjury. 28 U.S.C.A. § 1746.

_Jibril L. Ibrahim_
Affiant's Signature